EARL A. DARR AND FRANK A. BIBA, SURVIVING EXECUTORS OF THE ESTATE OF KATHERINE KRAFT, DECEASED, APPELLANTS, v. JOHN A. KERVICK, TREASURER OF THE STATE OF NEW JERSEY, ACTING AS THE DIRECTOR OF DIVISION OF TAXATION, DEPARTMENT OF THE TREASURY, STATE OF NEW JERSEY, RESPONDENT.

IN THE MATTER OF THE TRANSFER INHERITANCE TAX ASSESSMENT IN THE ESTATE OF KATHERINE KRAFT.

Argued January 11, 1960—Decided February 9, 1960.

478

*Mr. Royd C. Lutz,* of the New York Bar, argued the cause for the appellants (*Messrs. Losche & Losche,* attorneys; *Messrs. George F. Losche* and *Kent A. Losche,* of counsel; *Mr. Earl A. Darr, pro se,* and of the New York Bar).

*Mr. Joseph A. Jansen,* Deputy Attorney General, argued the cause for the respondent (*Mr. David D. Furman,* Attorney General of New Jersey, attorney).

The opinion of the court was delivered by

BURLING, J.  The appellants, executors of the estate of Katherine Kraft, prosecuted an appeal to the Superior Court, Appellate Division, from an assessment of the Acting Director of the Division of Taxation holding the *corpus* of a trust created by decedent *inter vivos* subject to the state transfer inheritance tax.  While the cause was pending in the Superior Court, Appellate Division, and prior to arguments there, we certified it on our own motion.  *R. R.* 1:10–1.

On May 26, 1924 decedent and her husband were possessed of 715 shares of stock in a corporation known as A. Schrader & Sons, and four lots of land owned in the husband's name located in the State of New York; of this property, 350 shares of the stock belonged to decedent absolutely and the remainder to her husband absolutely (including the land). On that date Kraft's Corporation was created and 100 shares of capital stock were issued by it.  Fifty-one of these shares were given to the husband in exchange for his property described above.  Forty-nine of these shares were given to decedent in exchange for her property described above.  On

the same day both decedent and her husband executed trust instruments with respect to the stock. By the instrument executed by her, decedent, as settlor, declared herself trustee of the 49 shares of Kraft's Corporation stock which she had only just acquired. The net income from the *corpus* was to be paid to decedent's husband for his life. Upon the husband's death, the principal was to be divided into as many shares as there were children surviving him and children not surviving him but leaving issue living at the husband's death. If the husband died without children or issue of children surviving him, the *corpus* was to revert to decedent. Otherwise, however, that portion of the principal representing shares of surviving issue of deceased children was to be distributed outright to such issue on the death of the life tenant. The shares of the children surviving the life tenant were to be held in further trust, the income of their respective shares to be paid to them for life. If these children should reach 35 years of age before dying, they were given a power of appointment, exercisable by will, with respect to their shares. Failing a valid exercise of such power, the share of the child so dying was to go to its living lawful heirs "as if such child had died intestate, a resident of the State of New York, and as if all of said property were real estate." All other trust property not otherwise disposed of was to be distributed to the living lawful heirs of decedent's husband as if he had died on the date of decedent's death intestate and a resident of the State of New York and as if such property were real estate. On the same date, decedent's husband executed a trust instrument creating a trust identical to that described above except that the life tenant was decedent. The *corpus* of this trust was the 51 shares of Kraft's Corporation stock owned by the husband. The transfers of the corporation's stock from decedent to herself as trustee and from the husband to himself as trustee were noted on the books of the corporation. It is the *corpus* of the first trust described above, that created by decedent, which the State seeks to tax.

At the time these trusts were created, decedent's husband was aware that he was suffering from pernicious anemia and would likely not recover. He did die within three months of the creation of the trusts described above. The transfer of the *corpus* of the trust created by him was taxed by the State as a transfer made in contemplation of death and this tax was sustained in the Prerogative Court. *In re Kraft's Estate,* 103 *N. J. Eq.* 543 (*Prerog.* 1928). Besides decedent, her husband was survived by three daughters. One of these died prior to her thirty-fifth birthday and without issue. Consequently the trust in her benefit created by decedent, consisting of one-third of 49 shares of Kraft's Corporation stock, lapsed and decedent took title to the property in accordance with the trust instrument. This property decedent transferred in her individual capacity to the trustees of the trust created by her husband (of which she was life beneficiary) to be retained and distributed according to the provisions of the instrument executed by her husband. This portion of the original *corpus* of 49 shares, amounting to 16-1/3 shares, was conceded by appellants to be taxable inasmuch as decedent received the income from these shares for her life, *i. e.,* as a transfer intended to take effect in possession or enjoyment at or after decedent's death. *R. S.* 54:34–1(*c*) as amended. In an effort to divest herself of any interest which might remain in her by virtue of the trust which she created, decedent transferred to the New York Community Trust by gift on May 25, 1951 "all her present and future rights, property, claims and demands in anywise reserved to * * *" the decedent in the trust created by her. This transfer, of course, did not affect the trust created by her husband of which she was life beneficiary.

The questions raised by this appeal are: (1) whether the *corpus* of the trust created by decedent on May 26, 1924 is taxable other than to the limited extent conceded by appellants; (2) if so, whether the tax ought to be reduced to account for consideration received by decedent in exchange for the creation of the trust; (3) if the entire *corpus* of

the trust is held taxable, whether such tax violates the New Jersey and Federal Constitutions; (4) whether interest was properly assessed on the tax due; and (5) whether certain payments made to the Division of Taxation were properly applied by the Division. These matters will be treated in the order in which they are listed.

The facts show, and the appellants appear to concede, that the trusts created by decedent and her husband fall within the class of trusts denominated for tax purposes as reciprocal trusts. Under this doctrine, discussed and applied by this court in *Newberry v. Walsh*, 20 *N. J.* 484, 491–494 (1956), "the person who furnishes consideration for the creation of the trust is considered the settlor, although nominally another is the settlor." *Hill's Estate v. Commissioner of Internal Revenue*, 229 *F.* 2d 237, 240 (2 *Cir.* 1956). The primary effect of this doctrine is to cause to be included within the decedent's gross estate (to use Federal Estate Tax terms) the *corpus* of a trust created by another which gives decedent an interest in the *corpus* which would cause it to be taxed to decedent had the interest been one reserved by decedent instead of granted to him, provided the trust was created by the other person as part of a plan whereby decedent creates a similar trust in favor of the other person in exchange for the trust created by him. *Lehman v. Commissioner of Internal Revenue*, 109 *F.* 2d 99 (2 *Cir.* 1940), *certiorari* denied 310 *U. S.* 637, 60 *S. Ct.* 1080, 84 *L. Ed.* 1406 (1940); *Commissioner of Internal Revenue v. Warner*, 127 *F.* 2d 913 (9 *Cir.* 1942); 1 *Bowe, Estate Planning and Taxation*, § 12.40 (1957). Some federal courts, dealing with problems arising under the Federal Estate Tax, have stated that trusts will not be considered reciprocal unless they were the result of a bargained for agreement. See, *e. g., Newberry's Estate v. Commissioner of Internal Revenue*, 201 *F.* 2d 874, 38 *A. L. R.* 2d 514 (3 *Cir.* 1953); *McLain v. Jarecki*, 232 *F.* 2d 211 (7 *Cir.* 1956). This court, however, has declined to adopt such a proof requirement in connection with the state transfer inheritance tax, demanding

only that it be proved that the trusts arose out of an informed and intended exchange of similar property causing a situation where some elements of ownership of the property are not lost to either party, even though the transfers, examined individually and without relation to each other, appear to divest the donor of any taxable incident of ownership. *Newberry v. Walsh, supra,* 20 *N. J.,* at *pages* 491–494. The doctrine is in essence nothing more than an application of the rule that for tax purposes the substance and not the form of the transaction will be controlling. *Id.,* 20 *N. J.,* at *pages* 493–494.

█ Appellants argue that the reciprocal trust doctrine can have no application here where the trust created by decedent herself is sought to be made subject to taxation. They contend that since the *corpus* sought to be taxed, *i. e.,* that affected by the trust instrument executed by decedent, was the subject of a complete and absolute *inter vivos* gift, no transfer inheritance tax should apply. We cannot agree with this conclusion, however, and we hold that, under the circumstances of this case, an imposition of a transfer inheritance tax on the *corpus* of the trust created by decedent is proper.

The respondent seeks to impose the tax complained of under those provisions of *N. J. S. A.* 54:34–1 which state:

"* * * [A]tax shall be and is hereby imposed * * * upon the transfer of property, real or personal * * * or of any interest therein or income therefrom, in trust or otherwise, to or for the use of any transferee, distributee or beneficiary * * *

* * * * * * *

c. Where * * * [property] is transferred by deed, grant, bargain, sale or gift * * * intended to take effect in possession or enjoyment at or after * * * death."

█ It is a well-established rule, venerable with age, that a transfer *inter vivos* by which the donor retains a life estate in the subject matter is a transfer "intended to take effect in possession or enjoyment at or after * * * death." *Carter v. Bugbee,* 91 *N. J. L.* 438 (*Sup. Ct.* 1918), affirmed

92 *N. J. L.* 390 (*E. & A.* 1919); *MacClurkan v. Bugbee,* 105 *N. J. L.* 89 (*Sup. Ct.* 1928), reversed on other grounds, 106 *N. J. L.* 192 (*E. & A.* 1930). It is substance, rather than form, which controls, and the transfer is subject to the transfer inheritance tax even if stated by its term to be absolute, if it appears that the donor in actuality retains a life interest in the property or its income. *American Board of Com'rs. for Foreign Missions v. Bugbee,* 98 *N. J. L.* 84 (*Sup. Ct.* 1922); *Congregational Home Missionary Society v. Bugbee,* 101 *N. J. L.* 214 (*E. & A.* 1925); *In re Harvey's Estate,* 2 *N. J. Misc.* 247 (*Prerog.* 1924), affirmed *sub nom. Moore v. Bugbee,* 3 *N. J. Misc.* 435 (*Sup. Ct.* 1925), affirmed 102 *N. J. L.* 720 (*E. & A.* 1926), appeal dismissed, 278 *U. S.* 565, 49 *S. Ct.* 36, 73 *L. Ed.* 509 (1928); *In re Russell's Estate,* 104 *N. J. Eq.* 578 (*Prerog.* 1929), affirmed *sub nom. City Bank Farmers Trust Co. v. McCutcheon,* 8 *N. J. Misc.* 547 (*Sup. Ct.* 1930), affirmed 108 *N. J. L.* 185 (*E. & A.* 1931). In *In re Brockett's Estate,* 111 *N. J. Eq.* 183 (*Prerog.* 1932), it was stated:

"A transfer is, of course, taxable under the statute, even though it be in form absolute, complete, immediately effective, and direct to the donee, if in substance and effect the donor retains or gets back for his life, the income or enjoyment (or the equivalent thereof)." *Id.,* 111 *N. J. Eq.,* at *page* 186.

From these cases, the rational basis for the imposition of the tax in the instant case appears. Decedent, although apparently making an absolute and complete *inter vivos* conveyance to her husband and children (and to the New York Community Trust), in effect reserved to herself a life interest in the income of the property conveyed.

*In re Honeyman's Estate,* 98 *N. J. Eq.* 638 (*Prerog.* 1925), affirmed *sub nom. Bugbee v. Board of Foreign Missions of the Presbyterian Church,* 4 *N. J. Misc.* 99 (*Sup. Ct.* 1926), affirmed 103 *N. J. L.* 173 (*E. & A.* 1926), is not contrary to this result. In that case the donor gave $6,000 each to two missionary societies. At the same time the donees

agreed to give the donor each year a stated amount which was equal to a reasonable interest on the donated sum. But it was not stated that the return was interest on the donated sum, nor was donees' possession or control of it to be conditioned upon or postponed to donor's death. The Prerogative Court disallowed the tax, a result which was approved on appeal by the former Supreme Court and Court of Errors and Appeals. The Prerogative Court suggested a distinction between the case before it and the principle in *In re Harvey's Estate, supra,* in the following words:

"The distinction, I think, rests on whether or not the donor retains or rather whether the donee is deprived of an interest of some kind, whether as to principal or income or both, in the very property transferred, until the donor's death. Even though immediate possession pass to the donee, if the donor (or some third party) is to receive interest on the sum transferred, or the income, or part of the income, arising from the property transferred or from other property which the donee might substitute in place thereof (the same *corpus* though changed in form), or a sum equal to the whole or a part of income arising from such *corpus* (the same income though in another form), in any such case the intent is clear that the enjoyment (in whole or in part) of the thing transferred is intended not to take effect until the donor's death. But, where the enjoyment of the thing transferred is in nowise delayed until the donor's death, notwithstanding that the donee's entire net income may be in nowise increased, or may be even diminished, until the donor's death, the transfer is not taxable." 98 *N. J. Eq.,* at *page* 643.

Although applied in subsequent litigation, see *e. g., In re Kellogg's Estate,* 123 *N. J. Eq.* 322 (*Prerog.* 1938); *Fidelity Union Trust Co. v. Thayer-Martin,* 118 *N. J. L.* 277 (*Sup. Ct.* 1937), the rule in *Honeyman* was never expanded beyond the facts on which it was decided; see, *e. g., Central Hanover Bank & Trust Co. v. Martin,* 129 *N. J. Eq.* 186 (*Prerog.* 1941), affirmed 129 *N. J. L.* 127 (*E. & A.* 1942), affirmed *sub nom. Central Hanover Bank & Trust Co. v. Kelly,* 319 *U. S.* 94, 63 *S. Ct.* 945, 87 *L. Ed.* 1282 (1943); *Fidelity Union Trust Co. v. Thayer-Martin, supra,* and on occasions was avoided on other grounds, *Nicholas v. Martin,* 128

*N. J. Eq.* 344 (*Prerog.* 1940) (contemplation of death); *Avery v. Walsh,* 138 *N. J. Eq.* 80 (*Prerog.* 1946) (same). In any event, the difference between the *Honeyman* case and the instant situation is clear. In *Honeyman* the donor relied for his allegedly retained life interest at best on donee's general credit and at worst on donee's good will. In economic realty, therefore, the donor in *Honeyman* was in a much less favorable position than a person who expressly retains a life interest in the specific property conveyed. In the instant case, however, this distinction does not exist, for the decedent is assured of a legally enforceable income on specific property, which is not merely similar in value to that which she gave up, but virtually identical to it. In a prior case involving facts strikingly similar to those in the instant case, and in which the Prerogative Court reached a result in accord with our position here, the *Honeyman* case was quickly dismissed. In that case, *In re Perry's Estate,* 111 *N. J. Eq.* 176 (*Prerog.* 1932), the court stated:

"Taxing acts being subject to strict interpretation, the taxpayer [in *Honeyman*] was entitled to the benefit of the doubt. The transfer accordingly was held not taxable, and a principle was suggested, to wit, whether the thing reserved or given back to the transferor for his life 'is an interest in, or identifiably tied up with, the very things transferred,' as a test in cases of that kind. The present case, however, is not of that kind; the transfer is not direct, complete and immediate; the actual transfer of possession to the beneficiary is postponed until the transferor's death, and in substantial effect the enjoyment of the subject of the transfer is retained by the transferor for his life. The *Honeyman* determination therefore is neither controlling nor applicable in the present case." *Id.,* 111 *N. J. Eq.,* at *page* 180.

We hold, therefore, that the *corpus* of the trust created by decedent is subject to the New Jersey transfer inheritance tax as a transfer "intended to take effect in possession or enjoyment at or after * * * death." *N. J. S. A.* 54:34–1(c).

Nor are the appellants entitled to a credit for consideration received in exchange for the transfer. In *In re Kraft's Estate,*

103 *N. J. Eq.* 543 (*Prerog.* 1928), a similar problem was raised. It was stated:

"Consider, for instance—if A, about to die, transfers shares of stock in X Company worth $500,000 to B, in consideration of B's promise to transfer to A's children at A's death, shares of stock of Y Company, of substantially equal value, or in consideration of an actual contemporaneous transfer by B to A's children. In the one case there would be a surrender of valuable rights by B; and A's children could doubtless get decree for specific performance by B; in the other case there would be an actual transfer by B of equal value to A's transfer. In both cases, however, A's estate is depleted; in both cases the transaction, in substance (and it has repeatedly been held that it is the substance, and not the form, of the transaction which governs) amounts to a gift, in lieu of gift by will, to A's children, which is the very thing that the amendment to the statute intends to tax." *Id.*, 103 *N. J. Eq.*, at *pages* 548–549.

It was concluded that no credit against the tax should be given since the purpose of a credit based on consideration received for an *inter vivos* transfer was to prevent what would be in effect double taxation. Here the reciprocal receipt of consideration prevented economic depletion of the decedent's estate, and if appellants' contentions were accepted, the State would be denied taxes on both estates. The same reasoning prevents us from allowing a credit in the instant case. See *Schroeder v. Zink*, 4 *N. J.* 1, 10 (1950).

Appellants contend that subjecting the *corpus* in question to the transfer inheritance tax violates the Fourteenth Amendment to the Federal Constitution and *N. J. Const.* 1947, *Art.* I, *par.* 20. Primary reliance is placed on *Kohl v. United States*, 226 *F.* 2d 381 (7 *Cir.* 1955). In a portion of the opinion in that case (quoted by appellants in their brief) the court said:

"To tax as a part of his estate something which was no longer his, is to do violence to our constitutional provisions * * * [citing cases]. This is not one of those cases where a tax is constitutionally imposed because the assignor has retained incidents of ownership in the property transferred * * *." *Id.*, 226 *F.* 2d, at *page* 384

The only real distinction between the instant case and those cases expressly referred to by the court in *Kohl* as being constitutional is merely that in the instant case the retained incidents of ownership existed by virtue of the operation of reciprocal trusts, while in the cases referred to in *Kohl* the incidents of ownership were retained in the very property transferred. As we stated in *Newberry v. Walsh, supra,* 20 *N. J.,* at *pages* 493–494, this distinction, being purely a matter of form rather than substance, will not be permitted to control. Thus it appears that the tax imposed in the instant case is based upon retained incidents of ownership and violates no constitutional provision.

The appellants contend that it was error to compute interest on the final amount assessed by the Division from one year after the date of decedent's death. This would seem especially forceful with respect to the period up to the date on which the final tax bill was rendered, *i. e.,* September 4, 1958. Thus, for over two years interest was charged against the estate during which time the appellants had no certain knowledge whether the transfer in question would be taxed to decedent's estate. See *In re Kraft's Estate,* 103 *N. J. Eq.* 543, 545 (*Prerog.* 1928). Nevertheless, the statutory command is clear. It states that interest at "six per centum (6%) per annum *shall* be charged." *N. J. S. A.* 54:35-3 (emphasis supplied). This language leaves no discretion in the matter. The levying of the interest is proper.

Appellants' argument that their second payment on account was not properly applied is without merit. The general rule is that payments on account should be applied to the satisfaction of interest due and only then to the principal, if any of the payment be available. 47 *C. J. S. Interest* § 66. And in these circumstances the matter is not one for determination of the debtor. *Cf. State v. Erie Railroad Co.,* 23 *N. J. Misc.* 203, 215 (*Sup. Ct.* 1945).

After both parties had filed briefs in the instant appeal, but before arguments, the respondents made a belated claim for additional interest. Whether the amount is properly due

depends on a construction of *R. S.* 54:36–5. A considerable time before this matter was raised, appellants had been rendered what was purported to be a final bill with regard to the estate. Suffice it to say that inasmuch as the matter is not simply one of computation, it is now too late for the respondents to make this claim.

We hold, therefore, that the transfer in question was properly subjected to the transfer inheritance tax, *R. S.* 54:33–1 *et seq.*, that no credit for consideration received should be allowed, that the tax does not violate any constitutional principle, that interest was imposed properly beginning one year after the date of death, *N. J. S. A.* 54:35–3, that all payments on account were applied according to established principles, and that the additional levy for interest requested by respondents should be denied. The assessment appealed from is affirmed in every respect.

*For affirmance*—Chief Justice WEINTRAUB, and Justices BURLING, JACOBS, FRANCIS, PROCTOR, HALL and SCHETTINO—7.

*For reversal*—None.