SYLLABUS

This syllabus is not part of the Court's opinion. It has been prepared by the Office of the Clerk for the convenience of the reader. It has been neither reviewed nor approved by the Court. In the interest of brevity, portions of an opinion may not have been summarized.

**Estate of Mary Van Riper v. Director, Division of Taxation** (A-51-18) (082000)

**Argued October 8, 2019 -- Decided February 5, 2020**

**SOLOMON, J., writing for the Court.**

Unlike the common estate-planning strategy whereby a married couple deeds property into two trusts, which are taxed in two phases upon the death of each spouse, Walter and Mary Van Riper transferred ownership of their marital home to a single irrevocable trust. Walter passed away shortly after transfer of the property to the trust. Six years later, after Mary passed away, the trustee distributed the property to the couple's niece. In this appeal, the Court considers whether the New Jersey Division of Taxation (Division) properly taxed the full value of the home at the time of Mary's death.

Walter and Mary owned their home as tenants by the entirety, which means that they were each considered to own 100% of their home and that neither could convey an interest in the home without the agreement of the other. The record reveals that Walter and Mary together transferred the deed to their marital residence in 2007 to a single irrevocable trust, the Van Riper Residence Trust (Trust). Walter and Mary each retained a life interest and directed that any remainder in the Trust pass to their niece, Marita, upon the death of the surviving spouse.

Walter and Mary directed that, if sold, all proceeds from the sale of their residence would be held in trust for their benefit and would be utilized to provide housing and shelter during their lives. Walter died nineteen days after the creation of the Trust. Mary died six years later, still living in the marital residence. Mary's inheritance tax return reported one-half of the date-of-death value of the marital residence as taxable. However, the Division conducted an audit and imposed a transfer inheritance tax assessment based upon the entire value of the residence at the time of Mary's death.

Mary's estate paid the tax assessed but filed an administrative protest challenging the transfer inheritance tax assessment. The Division issued its final determination that the full fair market value of the marital residence held by the Trust should be included in Mary's taxable estate for transfer inheritance tax purposes.

The estate filed a complaint seeking a 50% refund of the tax paid. The Tax Court held that the entire value of the residence was subject to transfer inheritance tax and granted summary judgment for the Division. 30 N.J. Tax 1, 18 (Tax 2017).

The Appellate Division affirmed the Tax Court's conclusion, rejecting the estate's argument that transfer inheritance tax should only be assessed on Mary's undivided one-half interest in the residence. 456 N.J. Super. 314, 320-21 (App. Div. 2018).

The Court granted the estate's petition for certification. 236 N.J. 565 (2019).

**HELD:** The Court agrees with both the Tax Court and the Appellate Division that the Division properly taxed the entirety of the residence when both life interests were extinguished, and the remainder was transferred to Marita. The property's transfer, in its entirety, took place "at or after" Mary's death, and was appropriately taxed at its full value at that time. In light of the estate-planning mechanism used here, any other holding would introduce an intolerable measure of speculation and uncertainty in an area of law in which clarity, simplicity, and ease of implementation are paramount.

1. N.J.S.A. 54:34-1 presumptively imposes a transfer inheritance tax on all completed transfers of property worth $500 or more made within three years of the transferor's death, where the property "is transferred by deed, grant, bargain, sale or gift made in contemplation of the death of the grantor, vendor or donor, or intended to take effect in possession or enjoyment at or after such death." N.J.S.A. 54:34-1(c) (emphasis added). N.J.S.A. 54:34-1(c)'s "at or after death" provision is a common feature of inheritance tax statutes and is intended to prevent the owner of property from evading liability for transfer inheritance tax. The transfer of property to a trust for the duration of the transferor's lifetime is treated as a transfer "at or after death" when the person creating the trust retained income or some benefit for his life with remainder over on his death. Accordingly, for a transfer to be taxable under the "at or after death" provision of N.J.S.A. 54:34-1, it is necessary that the settlor retain in himself some realistic interest, power or control or some other "string" during his lifetime, or his death must be the determinative and indispensable event in the shifting of economic benefits and burdens. Under N.J.S.A. 54:34-1.1, if the grantor completely and irrevocably severs ties to the trust more than three years before death, then no transfer inheritance tax will be assessed even if the grantor's death triggers a change in the beneficiary of the trust. Here, Walter and Mary's transfer falls squarely within the ambit of N.J.S.A. 54:34-1(c), and they did not satisfy the condition necessary for the exception to the transfer inheritance tax set forth in N.J.S.A. 54:34-1.1 to apply. (pp. 9-13)

2. Turning to whether Marita inherited the entirety of the marital residence or only a one-half interest upon Mary's death, the Court finds no basis for the view that the inheritance occurred in two stages. First, New Jersey has no law specifying that the joint conveyance of real property into a single trust destroys a tenancy by the entirety. Second, New Jersey

2

law permits both real and personal property to be held by spouses and civil union partners as tenants by the entirety when the spouses or partners obtain that property under conditions satisfied by the trust instrument here. Accordingly, even if deeding the property to the Trust did sever the tenancy by the entirety, a new tenancy by the entirety was created through the very specific terms of the Trust. The terms of the Trust, moreover, make it clear that no interest in the property would pass to Marita prior to the deaths of both spouses. The trust documents specify that the trustee's primary obligation was to ensure that Walter and Mary had a residence and any custodial care required for their entire lives, and authorize the trustee to sell the marital residence and apply the proceeds of the sale toward their living or care expenses. It would be unfair to assess a tax based on one-half of the value of the residence at Walter's death -- Marita's remainder interest -- because, under the controlling terms of the Trust, it was not clear that there would be any remainder for Marita to inherit. (pp. 13-16)

3. Not only is there no reason or legal basis to value Walter and Mary's interests in the residence as though they had partitioned the property by transferring it to the Trust, but there are strong practical reasons not to do so. The tax law's goals of clarity, simplicity, and ease of implementation would be subverted by requiring the Division to engage in such speculation. Here, where there is a single trust that allows for the total depletion of the entrusted property, that property can be taxed with certainty only after both spouses have died and the trust has satisfied its obligations. There is no reason to treat the single trust created here the same as the more common grant creating two separate trusts, and the Court discusses and finds inapposite the cases advanced in support of the argument that the property at issue here should have been valued in two steps. (pp. 16-19)

4. The Tax Court correctly found, consistent with the relevant case law, that the retention of life interests by Walter and Mary "postponed [Marita's] enjoyment of the property until the death of both transferors." 30 N.J. Tax at 11. Under the terms of the Trust, Mary retained power or control or some other "string" during her lifetime over the entirety of the marital residence, not an undivided one-half interest. Mary's death allowed the trustee to transfer the remainder of the property -- Mary's 100% interest in the marital estate -- to Marita. Accordingly, when use and enjoyment of the residence was yielded to Marita, the transfer was subject to the transfer inheritance tax. The property's transfer, in its entirety, took place "at or after" Mary's death, and was appropriately taxed at its full value at that time. (pp. 19-20)

    **AFFIRMED.**

**CHIEF JUSTICE RABNER and JUSTICES LaVECCHIA, ALBIN, PATTERSON, FERNANDEZ-VINA, and TIMPONE join in JUSTICE SOLOMON'S opinion.**

# SUPREME COURT OF NEW JERSEY
## A-51 September Term 2018
### 082000

Estate of Mary Van Riper,

Plaintiff-Appellant,

v.

Director, Division of Taxation,

Defendant-Respondent.

On certification to the Superior Court,
Appellate Division, whose opinion is reported at
456 N.J. Super. 314 (App. Div. 2018).

| Argued | Decided |
|---|---|
| October 8, 2019 | February 5, 2020 |

James J. Curry, Jr., argued the cause for appellant (Law Office of James J. Curry, Jr., attorneys; James J. Curry, Jr., and Timothy J. Petrin, on the brief).

Heather Lynn Anderson, Deputy Attorney General, argued the cause for respondent (Gurbir S. Grewal, Attorney General, attorney; Melissa Dutton Schaffer, Assistant Attorney General, of counsel, and Heather Lynn Anderson, on the brief).

Andrew J. DeMaio argued the cause for amicus curiae New Jersey State Bar Association (New Jersey State Bar Association, attorneys; Evelyn Padin, President, of counsel, John E. Keefe, Jr., Andrew J. DeMaio, Glenn A. Henkel, Jill Lebowitz, and Heather G. Suarez, on the brief).

1

Edward C. Eastman, Jr. argued the cause for amicus curiae New Jersey Land Title Association (Davison, Eastman, Muñoz, Lederman & Paone, attorneys; Peter A. Chacanias, on the brief).

JUSTICE SOLOMON delivered the opinion of the Court.

New Jersey is one of a handful of states with an inheritance tax. According to the New Jersey Division of Taxation (Division), a common estate-planning strategy adopted by married couples in light of that tax is a transfer of property during the lifetime of the couple into two trusts, leaving each spouse with sole ownership of an undivided one-half interest in the property for life. Upon the death of the first spouse, his or her trust takes ownership of that deceased spouse's interest in the property and tax is assessed on that undivided one-half interest -- a "compromise tax" under N.J.S.A. 54:36-3 -- based upon the property's value at that time. Upon the second spouse's passing, tax on that spouse's undivided one-half interest in the property is assessed upon that spouse's trust. The full value of the property is thus taxed in two phases upon the death of each spouse.

The estate-planning measures used in this case were different. Here, Walter and Mary Van Riper transferred ownership of their marital home to a single irrevocable trust. Under the terms of that trust, each spouse retained a life interest, with ownership of the property or what might remain from the

2

proceeds of its sale to pass to the couple's niece upon the death of the second spouse. Specific language in the trust provided that the full value of the property would be made available to provide shelter for the couple and to finance any care that might be required during their lifetimes. Walter passed away shortly after transfer of the property to the trust. Six years later, after Mary passed away, the trustee distributed the property to the couple's niece.

The Estate of Mary Van Riper (the Estate), as petitioner, and supportive amici argue that, despite the differences between the estate-planning measures taken by the Van Ripers and the more common two-trust method described above, the result should be the same. The Estate contends that transfer inheritance tax should now be assessed on only one-half of the value of the home and, because the Division failed to tax Walter's undivided one-half interest at the time of his death, his interest can no longer be taxed.

The Division counters that, under the specific terms of the single trust used in this case, no transfer of property occurred until Mary's death, at which time Mary's 100% interest in the home passed to her niece and became taxable. Thus, the Division asserts, the Estate was properly taxed for the full value of the home at the time of Mary's death.

Like the Tax Court and the Appellate Division, we agree with the Division's interpretation of the language of the trust used in this case and

3

application of the transfer inheritance tax statute, N.J.S.A. 54:34-1. The Division's view also accords with prior case law and advances the vital policy goals of clarity, simplicity, and ease of implementation. We therefore affirm the Appellate Division's judgment.

I.

Walter and Mary owned their home as tenants by the entirety, which means that they were each considered to own 100% of their home and that neither could convey an interest in the home without the agreement of the other. See Cap. Fin. Co. of Del. Valley, Inc. v. Asterbadi, 389 N.J. Super. 219, 227 (Ch. Div. 2006). Only a married couple can own real property as tenants by the entirety and, in doing so, each spouse owns the entire property as a single unit. See ibid. ("A tenancy by the entirety is established when property is held by a husband and wife with each becoming seized and possessed of the entire estate; after the death of one, the survivor takes the whole."). The record reveals that Walter and Mary together transferred the deed to their marital residence in 2007 to a single irrevocable trust, the Van Riper Residence Trust (Trust). Walter and Mary each retained a life interest and directed that any remainder in the Trust pass to their niece, Marita Kresge, the Trust's sole contingent beneficiary, upon the death of the surviving spouse.

4

Although the trust documents allowed for the sale of the Van Riper's residence, Walter and Mary directed that, if sold, all proceeds from the sale of their residence would be held in trust for their benefit and would be utilized to provide housing and shelter during their lives. The trust documents also provided that any funds from the sale of the property would go first to purchasing a residence in which Walter and/or Mary could live and receive care, second for their support, and lastly to the upkeep of the new residence.

Walter died nineteen days after the creation of the Trust. Walter's resident decedent inheritance tax return did not report any interest in the marital residence as taxable, and the Division did not assess any transfer inheritance tax against his estate. Mary died six years later, still living in the marital residence. Mary's inheritance tax return reported one-half of the date-of-death value of the marital residence ($467,000) as taxable. However, the Division conducted an audit and imposed a transfer inheritance tax assessment based upon the entire value of the residence at the time of Mary's death ($935,000).

Mary's estate paid the entire tax assessed but filed an administrative protest challenging the transfer inheritance tax assessment. The Division issued its final determination that the full fair market value of the marital residence held by the Trust should be included in Mary's taxable estate for

transfer inheritance tax purposes. The Estate then filed a complaint with the Tax Court seeking a 50% refund of the tax paid.

The Tax Court held that the entire value of the residence was subject to transfer inheritance tax and granted summary judgment for the Division. Estate of Riper v. Dir., Div. of Tax'n, 30 N.J. Tax 1, 18 (Tax 2017). The court first noted that under N.J.S.A. 54:34-1, any transfer of real property or any interest therein, intended to take effect at or after death, is subject to transfer inheritance tax. Id. at 7. The Tax Court observed that when the Trust was created, there were three distinct interests: (1) Walter's life estate, (2) Mary's life estate, and (3) Marita's remainder. Id. at 17. The court then rejected the Estate's argument that only Mary's undivided one-half interest in the residence was taxable upon her death. Id. at 17-18.

The court held that Walter's life estate was extinguished upon his death in 2007, and that Mary's life estate, consisting of 100% of the marital residence, was extinguished upon her death in 2013. Id. at 17. Under the express terms of the Trust, the court concluded that Marita did not receive any interest in the remainder of the Trust until after the deaths of both Walter and Mary. Id. at 17-18. Accordingly, the court affirmed the Division's determination that the full value of the residence was subject to tax under

6

N.J.S.A. 54:34-1(c) upon the death of the surviving spouse. Id. at 18. The Estate appealed.

The Appellate Division affirmed the Tax Court's conclusion. Estate of Van Riper v. Dir., Div. of Tax'n, 456 N.J. Super. 314 (App. Div. 2018). The court rejected the Estate's argument that transfer inheritance tax should only be assessed on Mary's undivided one-half interest in the residence. Id. at 320-21. The court explained that when the Van Ripers transferred their residence to the Trust, they both -- as tenants by the entirety -- held a 100% interest in the property, id. at 321, and together they made a transfer intended to take effect at or upon the death of the surviving spouse, id. at 327. The court thus rejected the Estate's argument that Walter's transfer of his interest in the property was taxable to his estate when he died, and concluded that the Division correctly determined that transfer of the entire residence to the contingent beneficiary upon Mary's death was subject to transfer inheritance tax at the time. Id. at 322-23.

We granted the Estate's petition for certification. 236 N.J. 565 (2019). The New Jersey State Bar Association (NJSBA) and the New Jersey Land Title Association (NJLTA), who appeared as amici before the Appellate Division, participated before this Court pursuant to Rule 1:13-9.

II.

The Estate asserts that the Division missed its opportunity to assess a transfer inheritance tax upon Walter's one-half interest in the residence and should now be precluded from taxing the full value of the Trust -- the whole marital residence -- after Mary's death. To support this contention, the Estate relies on Gauger v. Gauger, 73 N.J. 538 (1977); United States v. Heasty, 370 F.2d 525 (10th Cir. 1966); and Glaser v. United States, 306 F.2d 57 (7th Cir. 1962), and submits that the moment Walter and Mary transferred their marital residence to the Trust as tenants by the entirety, their tenancy was severed and each spouse retained a one-half interest in the residence. The Estate maintains, therefore, that because Mary held only a one-half interest in the residence, the Division erroneously taxed its full value upon her death. The NJSBA and the NJLTA join in the Estate's arguments.

The Division, relying upon N.J.S.A. 54:34-1(c), argues that the entire unapportioned date-of-death value of the residence is includable in Mary's taxable estate. The Division asserts that the ultimate transfer of the Trust's remainder to the contingent beneficiary, Marita, resulted in a taxable transfer of the full value of the residence -- Mary's entirety interest, not a one-half interest.

8

III.

The question presented here is whether the Division erroneously imposed a transfer inheritance tax on the full value of the marital residence at the time of Mary's death. We consider this question mindful that application of the transfer inheritance tax law must provide predictability and certainty as to when transferred property is subject to taxation under N.J.S.A. 54:34-1(c). Cf. Slater v. Dir., Div. of Tax'n, 26 N.J. Tax 322, 334 (Tax 2012) ("Statutes of limitations in tax statutes are strictly construed in order to provide finality and predictability of revenue to state and local government." (quoting Bonanno v. Dir., Div. of Tax'n, 12 N.J. Tax 552, 556 (Tax 1991))).

A.

1.

New Jersey's transfer inheritance tax statute, N.J.S.A. 54:34-1, explains that the tax owed by a person's estate is determined by the value of the property at the time of the person's death. Schroeder v. Zink, 4 N.J. 1, 13 (1950); Estate of Schinestuhl v. Dir., Div. of Tax'n, 26 N.J. Tax 289, 298 (Tax 2012). The statute presumptively imposes a transfer inheritance tax on all completed transfers of property worth $500 or more made within three years of the transferor's death,

> [w]here real or tangible personal property within this
> State of a resident of this State . . . or real or tangible

9

personal property within this State of a nonresident, is transferred by deed, grant, bargain, sale or gift made in contemplation of the death of the grantor, vendor or donor, or <u>intended to take effect in possession or enjoyment at or after such death</u>.

[N.J.S.A. 54:34-1(c) (emphasis added).]

N.J.S.A. 54:34-1(c)'s "'at or after death' provision is a common feature of inheritance tax statutes. It first appeared in our law in 1892." <u>In re Estate of Lingle</u>, 72 N.J. 87, 93 (1976) (citing New Jersey's first inheritance tax statute: <u>L.</u> 1892, <u>c.</u> 122). That provision is intended to prevent the owner of property from evading liability for transfer inheritance tax even though he or she has made "a lifetime transfer which is, in effect, a substitute for or a substantial equivalent of a . . . distribution" after death. <u>Ibid.</u> Thus, New Jersey has recognized for more than a century that "a transfer [during a person's lifetime] by which the donor retains a life estate in the subject matter is a transfer 'intended to take effect in possession or enjoyment at or after . . . death.'" <u>Darr v. Kervick</u>, 31 N.J. 476, 483 (1960) (quoting <u>Carter v. Bugbee</u>, 91 N.J.L. 438, 442 (1918)); <u>accord</u> <u>Berg v. Dir., Div. of Tax'n</u>, 17 N.J. Tax 256, 263 (Tax 1998) (stating same and explaining that "[c]ourts consider such transfers to be [upon death] by their very nature, because the donors are not regarded as having divested themselves of the property at the time of the transfer, since they retain the right to the enjoyment of the income").

10

The transfer of property to a trust for the duration of the transferor's lifetime is likewise treated as a transfer "at or after death" when the person creating the trust "retained income or some benefit for his life with remainder over on his death." In re Estate of Lichtenstein, 52 N.J. 553, 576 (1968). Accordingly, for a transfer to be taxable under the "at or after death" provision of N.J.S.A. 54:34-1, it is necessary "that the settlor retain in himself some realistic interest, power or control or some other 'string' during his lifetime, or his death must be the determinative and indispensable event in the shifting of economic benefits and burdens." Id. at 578.

Prior to 1955, if a grantor placed property in trust for the benefit of one person or entity during the grantor's life with a change in beneficiaries upon the grantor's death, the transfer to the second beneficiary was taxed as a transfer of inheritance even if the grantor created the trust more than three years prior to death and retained no beneficial interest in, or power over, the entrusted property. See In re Lambert, 63 N.J. 448, 456-57 (1973). That was true because the grantor's death triggered the transfer -- it was the "determinative and indispensable event in the shifting of economic benefits and burdens." See Lichtenstein, 52 N.J. at 576.

In 1955, the broad scope of the transfer inheritance tax statute was limited by legislation relevant in the trust context. Lambert, 63 N.J. at 456-57.

11

L. 1955, c. 135 brought New Jersey law into conformity with federal law and the law of neighboring states, which did not tax such transfers.  Id. at 457. Codified at N.J.S.A. 54:34-1.1, the 1955 enactment provides that

> [a] transfer of property by deed, grant, bargain, sale or gift wherein the transferor is entitled to some income, right, interest or power, either expressly or by operation of law, shall not be deemed a transfer intended to take effect at or after transferor's death if the transferor, more than 3 years prior to death, shall have executed an irrevocable and complete disposition of all reserved income, rights, interests and powers in and over the property transferred.
>
> [(emphases added).]

Under that provision, if the grantor completely and irrevocably severs his or her ties to the trust more than three years before his or her death, then no transfer inheritance tax will be assessed even if the grantor's death triggers a change in the beneficiary of the trust.

## 2.

Here, the effect of the transfer inheritance tax statute is clear under the plain language of the statute itself, as well as the case law discussed above.

Walter and Mary transferred their marital residence to a single irrevocable trust and lived in that residence until death through the life interests they retained.  It is clear from the trust documents that Walter and Mary intended to and did "retain[] income or some benefit for . . . life" in the

12

residence that could be sold to provide them with a more suitable residence, should their needs change, "with remainder over on his or her death." Lichtenstein, 52 N.J. at 576.

Walter and Mary's transfer falls squarely within the ambit of section (c) of the transfer inheritance tax statute, N.J.S.A. 54:34-1. Furthermore, they did not satisfy the condition necessary for the exception to the transfer inheritance tax set forth in N.J.S.A. 54:34-1.1 to apply -- they never "executed an irrevocable and complete disposition of all reserved income, rights, interests and powers in and over the property transferred" three years prior to death.

It is therefore clear that the transfer inheritance tax is properly applicable to the remainder conveyed through the Trust. We turn next to the question of whether the contingent beneficiary inherited the entirety of the marital residence or only a one-half interest upon Mary's death.

### B.

In arguing that only Mary's one-half interest in the residence was subject to the transfer inheritance tax, the Estate asserts that Walter and Mary's tenancy by the entirety was severed once the residence was transferred to the Trust in 2007. As a result, the Estate argues, Mary did not simply continue to own the entire interest in the Trust upon Walter's death the way she would have owned the entire residence had Walter died before the Trust was created.

13

Instead, according to the Estate and amici, Walter's interest passed to Marita upon his death, with a life estate going to Mary.

We find no basis for such a view. First, New Jersey has no law specifying that the joint conveyance of real property into a single trust destroys a tenancy by the entirety, and the Estate points to none. Cf. N.C. Gen. Stat. § 39-13.7(a) ("Any real property held by a husband and wife as a tenancy by the entireties and conveyed (i) to a joint trust or (ii) in equal shares to two separate trusts shall no longer be held by the husband and wife as tenants by the entirety and shall be disposed of by the terms of the trust or trusts . . . ."). Second, New Jersey law permits both real and personal property to be held by spouses and civil union partners as tenants by the entirety when the spouses or partners obtain that property under conditions satisfied by the trust instrument here. See N.J.S.A. 46:3-17.2(a) ("A tenancy by entirety shall be created when: . . . A husband and wife together take title to an interest in real property or personal property under a written instrument designating both of their names as husband and wife . . . ."). Accordingly, even if deeding the property to the Trust did sever the tenancy by the entirety, a new tenancy by the entirety was created through the very specific terms of the Trust.

The terms of the Trust, moreover, make it clear that no interest in the property would pass to Marita prior to the deaths of both spouses. If, as the

14

Estate and amici argue, Walter's ownership interest passed to Marita with a life estate to Mary, Mary would not have been able to sell or encumber the property without Marita's consent. Yet the trust documents specify that the trustee's primary obligation was to ensure that Walter and Mary had a residence and any custodial care required for their entire lives, and authorize the trustee to sell the marital residence and apply the proceeds of the sale toward their living or care expenses. Had Mary required a new residence, the trustee would have sold the marital residence; had Mary's care required the full value of the Trust, then the Trust would have been fully depleted to fund her care -- and all of this would have happened without any say in the matter by the contingent beneficiary.

Indeed, it would be unfair to assess a tax based on one-half of the value of the residence at Walter's death -- Marita's remainder interest -- because, under the controlling terms of the Trust, it was not clear that there would be any remainder for Marita to inherit. In fact, given the Trust's requirements of lifelong shelter and care for the Van Ripers, Walter's supposed "half interest" in the Trust could not exceed half of the value of the Trust minus the resources that would need to be allocated to Mary's care. The Division would thus have had to attempt to predict, at the point of Walter's death, Mary's life expectancy, the likely cost of her care, shifts in real estate values, as well as

15

other unknowable variables, to fairly assess a tax on half of what the Trust would ultimately prove to be worth.

Not only is there no reason or legal basis to value Walter and Mary's interests in the residence as though they had partitioned the property by transferring it to the Trust, but there are strong practical reasons not to do so. Our tax law's goals of clarity, simplicity, and ease of implementation would be subverted by requiring the Division to engage in such speculation. The more common vehicle of creating separate trusts with life estates makes it easy to value property in two 50% increments. The assessment of tax on the first 50% of the property is not speculative -- it is made based on the property's value at the time.

Here, where there is a single trust that allows for the total depletion of the entrusted property, that property can be taxed with certainty only after both spouses have died and the trust has satisfied its obligations. Accuracy can be achieved only by a retrospective calculation, not a prospective estimate. The different estate-planning mechanisms have different consequences reflecting the grantors' differing goals and intentions. In short, there is no reason to treat the single trust created here the same as the more common grant creating two separate trusts.

16

The Estate relies on <u>Gauger</u>, a case involving a divorce proceeding, to argue that the property at issue here should have been valued in two steps. In <u>Gauger</u>, the plaintiff wife and the defendant husband were married for twenty-five years. 73 N.J. at 541. Four years before the parties married, the defendant and his mother took title as joint tenants with a right of survivorship to a tract of farmland. <u>Id.</u> at 542. Approximately one month "before the parties separated and more than [ten] months before the divorce complaint was filed," the defendant's mother died and her interest in the farmland passed to the defendant. <u>Ibid.</u>

The trial court held in <u>Gauger</u> that the farmland was not subject to equitable distribution because the defendant had not acquired the property during the marriage, but rather by virtue of the deed executed before his marriage to the plaintiff. <u>Ibid.</u> The court held that the property was therefore immune from equitable distribution. <u>Ibid.</u> The Appellate Division affirmed. <u>Ibid.</u>

This Court reversed, recognizing that before the mother's death, the defendant owned only an undivided one-half interest in the property, <u>id.</u> at 543 (quoting <u>Goc v. Goc</u>, 134 N.J. Eq. 61, 63 (E. & A. 1943)), but, after his mother died, the defendant's "right to possession became exclusive," <u>id.</u> at 544. In other words, the mother's death changed the nature of the defendant's

ownership interest in the property. Ultimately, this Court found in Gauger that the property was subject to equitable distribution because the defendant acquired sole ownership of the property during his marriage to the plaintiff. Ibid. It was therefore necessary to value the property for equitable distribution purposes, and to accomplish this the Court "evaluate[d] that interest at one-half the net value of the property, as if partition by sale had occurred at the time of the [mother's] death." Ibid.

We agree with the Appellate Division that the Estate's reliance upon Gauger is misplaced. See Van Riper, 456 N.J. Super. at 322-23. Gauger dealt with the equitable distribution of property held as joint tenants with a right of survivorship, not the very different application of the transfer inheritance tax statute to property held as tenants by the entirety. Furthermore, unlike the death of the defendant's mother in Gauger, here Walter's death did not alter the nature of Mary's interest in the property, which she and Walter held as tenants by the entirety.

For support, the Estate also relies on Heasty and Glaser. In Heasty, the Tenth Circuit applied the Federal Tax Code to the transfer of property held under Kansas and Oklahoma law by a husband and wife as joint tenants with a right of survivorship and retained life interests. 370 F.2d at 526, 529. This appeal concerns application of New Jersey's inheritance tax law to property

18

held as tenants by the entirety.  The Appellate Division concluded correctly Heasty is likewise inapplicable.  Van Riper, 456 N.J. Super. at 325.

In Glaser, the Seventh Circuit interpreted and applied the Federal Tax Code to five separate properties in Indiana held by a husband and wife as tenants by the entirety and conveyed by deed to their children while retaining the properties for life.  306 F.2d at 58.  There was no trust created; the tenancy was destroyed upon the properties deeding to the children.  A one-half interest in the properties passed to the children at the time of either spouse's death, and either spouse's ties to the properties were completely and irrevocably severed upon the death of that spouse.  Therefore, Glaser is likewise inapposite.

## C.

In sum, we agree with both the Tax Court and the Appellate Division that the Division properly taxed the entirety of the residence when both life interests were extinguished, and the remainder was transferred to Marita.

The Tax Court correctly found, consistent with the relevant case law, that the retention of life interests by Walter and Mary "postponed [Marita's] enjoyment of the property until the death of both transferors."  Riper, 30 N.J. Tax at 11.  Under the terms of the Trust, Mary retained "power or control or some other 'string' during [her] lifetime" over the entirety of the marital residence, see Lichtenstein, 52 N.J. at 578, not an undivided one-half interest.

19

Mary's death allowed the trustee to transfer the remainder of the property -- Mary's 100% interest in the marital estate -- to Marita as the contingent beneficiary. Accordingly, when use and enjoyment of the residence was yielded to Marita, the transfer was subject to the transfer inheritance tax.

Therefore, the property's transfer, in its entirety, took place "at or after" Mary's death, and was appropriately taxed at its full value at that time. In light of the estate-planning mechanism used here, any other holding would introduce an intolerable measure of speculation and uncertainty in an area of law in which clarity, simplicity, and ease of implementation are paramount.

IV.

For the reasons set forth above, the judgment of the Appellate Division is affirmed.

CHIEF JUSTICE RABNER and JUSTICES LaVECCHIA, ALBIN, PATTERSON, FERNANDEZ-VINA, and TIMPONE join in JUSTICE SOLOMON'S opinion.

20